UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- X

IRON GATE SECURITY, INC.,

        Plaintiff,

    - against -

LOWE'S COMPANIES, INC.,

        Defendant.

-------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/16/16

**OPINION AND ORDER**

**15-cv-8814 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

On November 11, 2015, Iron Gate Security, Inc. ("Iron Gate") filed

this action against Lowe's Companies, Inc. ("Lowe's") alleging infringement of a

patent directed at the use of a mobile terminal and networked devices to monitor a

designated surveillance area. Lowe's now brings this motion to dismiss the

Complaint for failing to state a claim under Rule 12(b)(6). For the following

reasons, defendant's motion is GRANTED in part and DENIED in part.

## I.    BACKGROUND[1]

On September 11, 2001, the United States Patent and Trademark

---

    [1]    All facts recited herein, unless otherwise noted, are taken from the
Complaint ("Compl.").

Office issued United States Patent No. 6,288,641 (the "'641 Patent"), entitled "Assembly, And Associated Method, For Remotely Monitoring A Surveillance Area."[2]  The '641 Patent relates to, *inter alia*, the use of a mobile terminal and networked cameras to remotely monitor a surveillance area, such as a home or business.[3]  Iron Gate presently owns the '641 Patent.[4]

"Lowe's manufactures, uses, sells, offers to sell, and/or imports remote monitoring products, systems, and services in the United States that infringe one or more claims of the '641 Patent."[5]  This direct patent infringement is implemented through "the manufacture, use, sale, offer for sale, and/or importation of at least assemblies and apparatus including the Iris Smart Home Management System and its components such as Iris cameras, Iris Smart Hub and backend servers, and/or Iris mobile apps."[6]  The Iris Smart Home Management System and its associated products are, taken together, a home surveillance system: the consumer purchases Iris cameras and an Iris Smart Hub device and installs them according to instructions provided by Lowe's, and controls this system using a

---

[2]      Compl. ¶ 7.

[3]      *See id.* ¶ 8.

[4]      *See id.* ¶ 10.

[5]      *Id.* ¶ 13.

[6]      *Id.*

mobile application installed on a cell phone or other mobile device.[7]

Lowe's was put on notice of the '641 Patent, and its infringing behavior, in April 2015.[8]  The '641 Patent contains twenty-two total claims.  Of those claims, three claims (1, 15, and 22) are independent; the remainder are dependent.  Claim 1 is an assembly claim, claim 15 is a method claim, and claim 22 is an apparatus claim.  Those claims are set forth in full below:

**A.    Claim 1**

Claim 1 of the '641 Patent is directed towards:

An assembly for remotely monitoring at least a portion of a surveillance area, said assembly comprising:

At least one transducer selectably positionable at the at least selected portion of the surveillance area, said transducer selectably operable for transducing human-perceptible signals into transduced signals;

A controller containing a listing identifying positioning of said at least one transducer at the surveillance area, the listing dynamically configurable responsive to positioning of the at least one transducer at the surveillance area, said controller coupled at least selectably to receive the transduced signals generated by said at least one transducer, and said controller for controlling selection of operation of said transducer to transduce the human-perceptible signals into transduced signals;

A mobile terminal operable to transceive communication signals,

---

[7]    *See id.* ¶¶ 14-18, 21.

[8]    *See id.* ¶ 19.

said mobile terminal selectably operable to communicate with said controller and, in turn, to receive the transduced signals generated by a selected one of said at least one transducer, the selected one selected from the listing contained at said controller thereby to monitor the at least the selected portion of the surveillance area.[9]

**B.    Claim 15**

Claim 15 of the '641 patent is directed towards:

A method for remotely monitoring at least a portion of a surveillance area, said method comprising:

Positioning at least one transducer at the at least the selected portion of the surveillance area, each of the at least one transducer selectably operable to transduce human-perceptible signals into transduced signals;

Maintaining a listing identifying the at least one transducer positioned, during said operation of positioning, at the surveillance area;

Selecting which of the at least one transducer identified at the listing maintained during said operation of maintaining to operate to transduce the human-perceptible signals into the transduced signals;

Forwarding the transduced signals to a mobile terminal, thereby to monitor the portion of the surveillance area.[10]

**C.    Claim 22**

Claim 22 of the '641 Patent is directed towards:

---

[9]    '641 Patent, Ex. A to Compl., at 9.

[10]    *Id.* at 10.

In a radio communication system having a mobile terminal and network infrastructure between which a voice channel is formable to communicate therebetween, an improvement of apparatus for permitting a surveillance area to be remotely monitored by the mobile terminal, said apparatus comprising:

At least one transducer positioned at the surveillance area, said transducer for transducing human-perceptible signals at the surveillance area into electromagnetic signals; and

A controller containing a listing identifying positioning of said at least one transducer at the surveillance area, said controller coupled to the network infrastructure and to receive the electromagnetic signals generated by said at least one transducer, and said controller for effectuating a communication link with the mobile terminal to forward the electromagnetic signals thereto.[11]

## II.    LEGAL STANDARD

### A.    Motion to Dismiss Under Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must "accept[ ] all factual allegations in the complaint as true and draw[ ] all reasonable inferences in the plaintiff's favor."[12]  The court evaluates the sufficiency of the complaint under the "two-pronged approach" set forth by the Supreme Court in *Ashcroft v. Iqbal*.[13]  Under the first prong, a court may "begin by identifying pleadings that, because they are no more than conclusions, are not

---

[11]    *Id.*

[12]    *Grant v. County of Erie*, 542 Fed. App'x 21, 23 (2d Cir. 2013).

[13]    *See* 556 U.S. 662, 678-79 (2009).

entitled to the assumption of truth."[14]  For example, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[15]  Under the second prong of *Iqbal*, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[16]  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[17]  Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[18]

When deciding a 12(b)(6) motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."[19]  "'[I]t is 'axiomatic that the Complaint cannot be amended by briefs in opposition to a

---

[14]    *Id*. at 679.

[15]    *Id*. at 678 (citation omitted).

[16]    *Id*. at 679.

[17]    *Id*. at 678 (citation omitted).

[18]    *Id*. (quotations omitted).

[19]    *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

motion to dismiss.'"[20]

### B.     Leave to Amend

Rule 15(a)(2) provides that, other than amendments as a matter of course, "a party may amend [its pleading] only by leave of court or by written consent of the adverse party."[21]   Although "[t]he Court should freely give leave when justice so requires,"[22] it is "within the sound discretion of the district court to grant or deny leave to amend."[23]   When a motion to dismiss is granted, "'[i]t is the usual practice . . . to allow leave to replead.'"[24] Where a plaintiff inadequately pleads a claim and cannot offer additional substantive information to cure the deficient pleading, granting leave to amend is futile and should be denied.[25]

## III.   DISCUSSION

---

[20]      *Ace Arts, LLC v. Sony/ATV Music Pub., LLC*, 56 F. Supp. 3d 436, 451 (S.D.N.Y. 2014) (quoting *O'Brien v. National Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989)).

[21]      *Slayton v. American Express Co.*, 460 F.3d 215, 226 n.10 (2d Cir. 2006) (citation and quotation marks omitted).

[22]      Fed. R. Civ. P. 15(a)(2).

[23]      *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citation omitted).

[24]      *Heckman v. Town of Hempstead*, 568 Fed. App'x 41, 43 (2d Cir. 2014) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)).

[25]      *See Smith v. United States*, 554 Fed. App'x 30, 32 (2d Cir. 2013).

While the Complaint includes only one claim for relief ("Infringement of U.S. Patent No. 6,288,641 By Lowe's"), that claim for relief pleads infringement in three separate ways: direct infringement, induced infringement, and contributory infringement.  Iron Gate also requests its damages be enhanced due to Lowe's alleged willful infringement.

## A.    Direct Infringement

Allegations that plead that "a specific product [] allegedly infringes [the] patent by virtue of certain specific characteristics" meet the *Iqbal* plausibility standard.[26]  A plaintiff is not required to list which of the claims in the patent have been infringed in its pleading; as the Federal Circuit has recently reiterated, "a plaintiff need not even identify which claims are being infringed."[27]

An examination of the '641 Patent makes clear that each of the three independent claims requires the same essential elements: (1) An assembly (Claim 1), method (Claim 15) or apparatus (Claim 22) for remotely monitoring a surveillance area, (2) at least one signal transducer, (3) a listing of transducers, (4)

---

[26]    *Regeneron Pharms., Inc. v. Merbus B.V.*, No. 14 Civ. 1650, 2014 WL 2795461, at *4 (S.D.N.Y. June 18, 2014).

[27]    *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1334-35 (Fed. Cir. 2012).  This Court also notes that requiring this level of specificity at the pleadings stage would render this district's Local Patent Rule 6, requiring the submission of claim charts within 45 days after the Initial Scheduling Conference, superfluous.

the transducers being selected from the listing, (5) a controller containing the listing, and (6) forwarding the transduced signals to a user-accessible mobile terminal. While each of these claims uses the term "mobile terminal," only Claim 1 — the assembly claim — requires that the infringing assembly include a mobile terminal which receives signals from the transducer. Iron Gate alleges that Lowe's provides or uses each of these elements.

While Lowe's argues that it neither sells nor manufactures cellular phones or mobile devices that can be used as the "mobile terminals" referenced in the '641 Patent, this does not defeat Iron Gate's claim for direct infringement. While the term "mobile terminal" appears in each claim, only Claim 1 requires a direct infringer to make, use, sell, or offer to sell said mobile terminal. Iron Gate's Complaint explicitly alleges that Lowe's directly infringed Claim 1 through *use* of the elements of the claimed system.[28] Furthermore, the Complaint specifically alleges that Lowe's uses and sells the Iris mobile application which, when installed on a cellular device, constitutes the claimed mobile terminal.

Neither of the other two independent claims of the '641 Patent requires the direct infringer to make, use, sell, or offer to sell a mobile terminal. Claim 15 only recites a step of "forwarding the transduced signal *to* a mobile

---

[28]    *See* Compl. ¶ 13.

terminal,"[29] which Iron Gate alleges is accomplished by the components of Lowe's Iris Smart Home Management System. Likewise, Claim 22 only requires "at least one transducer" and "a controller" for use "[i]n a radio communication system having a mobile terminal and network infrastructure . . . ."[30] Here, Iron Gate alleges that the transducer and controller are sold by Lowe's for use in such a system, constituting a direct infringement of the '641 Patent. Therefore, Iron Gate has sufficiently pled direct infringement of at least each of the three independent claims of the '641 Patent.

### B.    Induced Infringement

"Inducement requires a showing that the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed specific intent to encourage another's infringement of the patent."[31] The Complaint alleges each of these elements. Namely, "Lowe's has . . . been . . . on notice of the '641 Patent at least as early as the end of April 2015," and "at least since its knowledge of the '641 Patent, Lowe's knowingly encourages, and continues to encourage, current

---

[29]    '641 Patent at 10 (emphasis added).

[30]    *Id.*

[31]    *Conair Corp. v. Jarden Corp.*, No. 13 Civ. 6702, 2014 WL 3955172, at *2 (S.D.N.Y. Aug. 12, 2014).

and potential customers to directly infringe [the '641 Patent]."[32]  The Complaint

also contains details regarding the printed instructional material and website

instructions provided by Lowe's instructing its customers as to how to use the Iris

Smart Home Management System in a manner that allegedly directly violates the

'641 Patent.  This level of detail is sufficient to survive a motion to dismiss.

### C.    Contributory Infringement

Contributory infringement requires the sale of "a component

especially designed for use in a patented invention" that "is not a staple article of

commerce suitable for substantial noninfringing use."[33]  To plead contributory

infringement, a plaintiff must plead "(1) that there was direct infringement, (2) that

the accused infringer had knowledge of the patent, (3) that the component has no

substantial noninfringing uses, and (4) that the component is a material part of the

invention."[34]

As explained above, Iron Gate has sufficiently pled direct

infringement and that Lowe's was aware of the '641 Patent.  Iron Gate also alleges

that the Iris Smart Home Management System and its various components have no

---

[32]    Compl. ¶¶ 19-20.

[33]    *Ricoh Co. Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325, 1337 (Fed.
Cir. 2008).

[34]    *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010).

substantial noninfringing use.  While Lowe's argues that Iron Gate's general allegation to that effect is insufficiently particular to satisfy *Iqbal*, "numerous post-*Iqbal* cases have not required detailed factual allegations in support of a plaintiff's claim that a defendant's product lacks substantial noninfringing uses."[35]  This is sensible, especially given the difficulty of proving a negative — that there is no substantial noninfringing use of a product — without the benefit of discovery.  Iron Gate's allegation of no substantial infringing use is sufficient here.  As to the fourth and final element, Iron Gate sufficiently alleges that the components of the Iris Smart Home Management System, including the Iris cameras, Smart Hub, and mobile applications, are material components of the invention claimed by the '641 Patent.

### D.   Willful Infringement

"[T]o establish willful infringement, a patentee much show . . . that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent."[36]  At the pleading stage, a plaintiff must "'plead facts giving rise to at least a showing of objective recklessness'" with regard to this

---

[35]     *Conair*, 2014 WL 3955172, at *4 (collecting cases).

[36]     *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007).

highly likely infringement.[37]

The facts pled here offer a plausible risk that Lowe's was infringing the '641 Patent by selling the Iris Smart Home System — and this is why Iron Gate's other claims survive Lowe's motion to dismiss.  But these allegations do not rise to the much higher level of objectively reckless risk of ingringement.  Without additional facts to support a conclusion that the risk of infringement was highly likely, Iron Gate has failed to meet its burden.

Furthermore, a complaint must "'demonstrate[] a link between the various allegations of knowledge of the patents-in-suit and the allegations that the risks of infringement were either known or were so obvious that they should have been known.'"[38]  Iron Gate pleads only that Lowe's was made aware of the '641 Patent and continued to market the Iris Smart Home System line of products.  While these facts may be interpreted to suggest Lowe's acted with reckless disregard to the risk of infringement, they just as easily support the conclusion that Lowe's was aware of Iron Gate's claims, but assumed them frivolous or invalid — assumed, that is, that no risk of infringement existed.  Iron Gate has pled no

---

[37]     *LaserDynamics USA, LLC v. Cinram Grp., Inc.*, No. 15 Civ. 1629, 2015 WL 6657258, at *4 (Oct. 30, 2015) (quoting *MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 236 (D. Del. 2012)).

[38]     *3D Sys., Inc. v. Formlabs, Inc.*, No. 13 Civ. 7973, 2014 WL 1904365, at *6 (S.D.N.Y. June 19, 2014) (quoting *MONEC*, 897 F. Supp. 2d at 236)).

additional facts supporting its request for damages to be enhanced for willful infringement. Its willfulness claim is therefore dismissed, with leave to amend.

## IV.   CONCLUSION

For the foregoing reasons, defendant's motion is GRANTED as to willful infringement, and DENIED as to all remaining claims. Leave to amend is granted as to willful infringement, and any amended complaint must be filed within twenty-one days of this Order. The Clerk of the Court is directed to close this motion (Dkt. No. 15). A conference is set for April 8, 2016, at 3:30 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            March 16, 2016

-14-

**–Appearances–**

**For Plaintiff:**

Gregory S. Gewirtz, Esq.
Jonathan A. David, Esq.
Alexander Solo, Esq.
Lerner, David, Littenberg, Krumholz & Mentlik LLP
600 South Avenue West
Westfield, NJ 07090
(908) 654-5000

**For Defendant:**

Shawn P. Regan, Esq.
Michael Oakes, Esq.
Steven L. Wood, Esq.
Hunton & Williams, LLP
200 Park Avenue, 52nd Floor
New York, NY 10166
(212) 309-1046